IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

MICHAEL CALABRO

VS.

NO. 8:19-CV-02433
JURY TRIAL DEMANDED

FILED ENTERED
LOGGED RECEIVED
NOV - 9 2020
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY DEPUTY

CASTLE LAW GROUP
CASTLE MARKETING GROUP
JUDSON PHILLIPS

**MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS OR IN THE ALTERNATIVE, MOTION TO COMPEL ARBITRATION IN NASHVILLE, TENNESSEE**

TABLE OF CONTENTS

1. Motion to Dismiss P.5
2. Memorandum of law/Brief P.7
3. Contract (with highlighted sections) Ex.A
4. Letter to Plaintiff Ex.B

# TABLE OF AUTHORITIES

**Cases**

Alliance Health Grp., LLC v. Bridging Health Options, LLC, 553 F.3d 397, 400 (5th Cir. 2008)....16
American Express Co. v. Italian Colors Restaurant, 570 U.S. 228, 233, 133 S.Ct. 2304, 186 L.Ed.2d 417 (2013)....18
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)....14
Bartels v. SABER HEALTHCARE GROUP, 880 F. 3d 668 - Court of Appeals, 4th Circuit 2018....16
Bell Atlantic Corp. v. Twombly, 550 U.S. 544, at 570 (2007)....14
Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)....12
Burger King, 471 U.S. at 474, 475, 105 S.Ct. 2174....13
Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir.2001)....12
Combs v. Bakker, 886 F.2d 673, 676 (4th Cir.1989)....10
Consulting Engineers Corp. v. Geometric Ltd, 561 F.3d 273,276 (4th Cir.2009)....10
Eastern Shore Markets v. JD Associates, LTD. 215 F.3d 175 (4th Cir. 2000)....14
Epic Systems Corp. v. Lewis, 138 S. Ct. 1612, 1621 (2018)....17
Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)....11
Int'l Shoe Co v. Washington, 326 U.S. 310 (1945)....10
Johansson Corp. v. Bowness Const. Co., 304 F. Supp. 2d 701, 705 - Dist. Court, D. Maryland 2004....12
McCleary-Evans v. Maryland Dept. of Transp., 780 F. 3d 582 - Court of Appeals, (4th Cir. 2015....14
Painter's Mill Grille, LLC v. Brown, 716 F.3d 342, 350 (4th Cir. 2013)....15
Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 438, 72 S.Ct. 413, 96 L.Ed. 485 (1952)....11
Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396-97 (4th Cir.2003)....11
World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)....12

**Statutes**

28 U.S.C. § 1391(b)....16, 19
9 USC § 2....17

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

MICHAEL CALABRO

VS.

NO. 8:19-CV-02433
JURY TRIAL DEMANDED

CASTLE LAW GROUP
CASTLE MARKETING GROUP
JUDSON PHILLIPS

MOTION TO DISMISS OR IN THE ALTERNATIVE, MOTION TO COMPEL ARBITRATION IN NASHVILLE, TENNESSEE

Defendant Judson Phillips[1] now moves this Court to dismiss the Plaintiff Michael Calabro's claims with prejudice, pursuant to Fed. R. Civ. P. 12(b)(2) and (6) for lack of personal jurisdiction, improper venue and failure to state a claim upon which relief can be granted. The plaintiff does not make out a case against Phillips, and regardless, Phillips is protected by the Corporate Veil Doctrine.

In the alternative, Phillips moves this court to compel arbitration in Nashville, Tennessee, pursuant to the attached agreement between Castle Law and Michael Calabro.

[1] Judson Phillips is making a special appearance in this matter to contest the Court's personal jurisdiction in this matter.

Respectfully Submitted,

Judson Phillips

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

MICHAEL CALABRO

VS.

NO. 8:19-CV-02433
JURY TRIAL DEMANDED

CASTLE LAW GROUP
CASTLE MARKETING GROUP
JUDSON PHILLIPS

MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS OR IN THE ALTERNATIVE, MOTION TO COMPEL ARBITRATION IN NASHVILLE, TENNESSEE

Comes now Judson Phillips[2] and offers this Memorandum of Law in support of his motion to dismiss or in the alternative, compel arbitration in Nashville, Tennessee.

FACTUAL BACKGROUND

In 2014, Phillips was living in Richmond, Virginia and wanted to return to the Nashville area. He answered an ad for a trial lawyer. That ad was placed by William Michael Keever. Keever held himself out as the business manager of a law firm and offered Phillips a job.

When Phillips arrived for his first day at work, Keever informed him the law firm no longer existed, but he would help Phillips set up a new law firm that sued timeshare developers and act as the firm's business manager.

[2] Judson Phillips is making a special appearance in this matter to contest the Court's personal jurisdiction in this matter.

Phillips had little choice, as his family was already in the process of moving back to Nashville. The law firm began and had success against developers, obtaining settlements and releases for clients.

In February 2015, Keever suggested changing the name of the firm to Castle Law Group. At the same time, he created Castle Marketing Group, which he owned.[3]

From the period of 2015 through mid 2017, Keever hatched a scheme where he directed most of the funds received for legal services to entities that Keever controlled. Keever's fraud was massive.

Keever's fraud was discovered in mid 2017 and Phillips severed the relationship and fired him as business manager for the law firm. Keever retaliated by taking the firm's website and publishing defamatory claims about the law firm, destroying its ability to generate revenue. Additionally, before his termination, he had downloaded a partial list of clients from the firm and he sent them emails under various names, telling them to demand refunds from the firm and file disciplinary complaints against Phillips. His goal was to destroy the firm, which ultimately happened in 2018.

In 2016, the plaintiff had a number of Diamond Timeshare contracts and he wanted to get out of them. Calabro, according to the complaint, searched online for ways to get out of his timeshare contracts. Then, according to him, out of the blue, he receives an "unsolicited" call from Battlefield Consulting, right after he was doing his internet searches. Calabro became a client of the law firm but became upset because

[3] Keever had an obsession with naming things Castle or some variation of that. He created numerous corporations, including Castle Venture Group, a Castle Marketing Group several years before Phillips met him. He also created Castle Logistics, Castle Partners and Castle Equity. Again, many of these created before Phillips met him.

that the firm would not guarantee litigation against Diamond, so he refused to provide documents the firm requested, including his contracts with Diamond.

His apparent goal was to simply run out the time on the contract and then demand a refund. On December 19, 2017, in response to a communication to the firm, Phillips notified Calabro that because he refused to cooperate with the contract, specifically Section 2 that required him to send documents to the firm, there would be no refund. The contract was attached as Exhibit A to the plaintiff's complaint.

The relevant part of section two states:

> Client agrees to promptly deliver to the Firm copies of all documents that are in Client's control or reasonably available to them, correspondence, notes, and memos that in any way relate to the Timeshare Agreement (s) and/or Developer. This includes the Client Fact Document, which must be completed in full and returned before the Firm can begin work on the Client's case;

The contract also stated:

> Client understands and agrees that the Legal Services provided herein and any Client fees relating to such Legal Services does not include the Firm's commencement or participation in any lawsuit, participation or engagement in any litigation, or participation in or initiation of any formal arbitration or mediation services.

## I. THIS COURT LACKS JURISDICTION OVER PHILLIPS

The complaint in this matter is mostly silent as to Phillips. There are some vague, conclusory allegations that are offered without any substantiation, such as

Phillips was practicing law in Maryland.[4] The only substantive claim that the plaintiff makes about Phillips is the December 19, 2017 letter, where Phillips advises the plaintiff that he has violated the terms of his contract and a refund will not be made. The allegations made against Phillips would not trigger any form of jurisdiction for Maryland. The allegations in the complaint filed by the plaintiff do not show sufficient contacts, ties or a relationship to this forum so that the Court may exercise jurisdiction over Phillips. Most of the Plaintiff's claims are cloaked in sweeping generalities. The Plaintiff does not mention anything that Phillips did, other than the letter. In all other allegations, Plaintiff simply lumps the parties in as the defendants, without stating what any of the defendants did individually.

Jurisdiction over a non-resident defendant when there are "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice" Int'l Shoe Co v. Washington, 326 U.S. 310 (1945).

As the Court noted in Consulting Engineers Corp. v. Geometric Ltd, 561 F.3d 273,276 (4th Cir.2009), quoting Combs v. Bakker, 886 F.2d 673, 676 (4th Cir.1989), "the plaintiff bears the burden making a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge."

In the Plaintiff's complaint, the Plaintiff admits that he searched on the Internet for options to get out of his timeshare and then he allegedly received an unsolicited call Battlefield Research and Consulting, a company based in Virginia.[5] Out of 330 million people in the United States, this company just happens to call the Plaintiff? What is the

[4] Page 4 of the complaint.
[5] Page 10 of the Complaint.

plausibility of that? A more likely scenario, based on the facts offered by the plaintiff, is that the plaintiff solicited the call from Battlefield Research and Consulting. If the plaintiff solicited the call, there is no jurisdiction over Phillips or any of the out of state defendants.

Regardless, nowhere in this chain of events is any factual basis to claim that Phillips "purposely availed himself" of the benefits of Maryland

When a defendant challenges a court's personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the burden rests ultimately with the plaintiff to prove, by a preponderance of the evidence, grounds for jurisdiction. See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396-97 (4th Cir.2003).

The nature of the claim and the defendant's contacts with the forum state determine whether a court may assert specific or general personal jurisdiction. Specific jurisdiction may exist where the claim is related to or arises out of the defendant's contacts with the state. See Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Alternatively, a defendant may be subject to general jurisdiction in a suit entirely unrelated to the defendant's contacts with the forum state where the defendant maintains "continuous and systematic" contact with the state. Id. at 414-415, 104 S.Ct. 1868 (quoting Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 438, 72 S.Ct. 413, 96 L.Ed. 485 (1952)).

A federal court may exercise personal jurisdiction over a non-resident defendant if (1) jurisdiction is authorized under the long-arm statute of the forum state, and (2) the assertion of jurisdiction comports with Fourteenth Amendment due process

requirements. See Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir.2001).

"The exercise of specific jurisdiction is consistent with the requirements of due process if "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The Fourth Circuit has taken a restrictive view of the due process analysis of state long-arm statutes and has emphasized that a defendant's contacts with the forum state must be tantamount to physical presence in the state to satisfy due process. Johansson Corp. v. Bowness Const. Co., 304 F. Supp. 2d 701, 705 - Dist. Court, D. Maryland 2004

Literally, the only claim of jurisdiction with Maryland the Plaintiff can claim is that Phillips sent him a letter.

Again, quoting Johansson:

The Supreme Court has made clear that an out-of-state party's contract with a party based in the forum state cannot "automatically establish sufficient minimum contacts" in the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Instead, the court must perform an individualized and pragmatic inquiry into the surrounding facts such as prior negotiations, the terms of the contract, the parties' actual course of dealing, and contemplated future consequences, in order to determine "whether the defendant purposefully established minimum contacts within the forum." Id. at 479, 105 S.Ct. 2174

The Plaintiff does not allege any specifics other than a conclusory and unsupported claim that Castle Law did business in Maryland. The Plaintiff does not allege Phillips engaged in business in Maryland.

During the time frame alleged and the Plaintiff admits that Castle Law was a Tennessee law firm. Phillips was a Tennessee attorney. The plaintiff does not allege that Phillips had a presence in Maryland. The Plaintiff does not allege that Phillips traveled to Maryland. In fact, the only contact with the State of Maryland the Plaintiff is able to articulate, is a single letter that resulted from the Plaintiff initially reaching out to a Virginia corporation.

Again, the Plaintiff states in his complaint that he searched the internet for solutions to get out of his timeshare contract, and out of 330 million people in this country, Battlefield Research and Consulting just happened to make an allegedly unsolicited call to the plaintiff. Again, the more plausible explanation, based on the facts offered by the plaintiff is, instead of just randomly receiving an unsolicited call, he in fact requested a call.

The facts alleged by the Plaintiff do not show a "substantial connection" to Maryland. The facts alleged by the Plaintiff do not show that "the defendant purposefully established minimum contacts within the forum." Burger King, 471 U.S. at 474, 475, 105 S.Ct. 2174.

In fact, one of the reasons the Plaintiff needed to come to Tennessee was because Tennessee is a state where there would be jurisdiction over Diamond Resorts.[6]

[6] Diamond Resorts owns properties in Sevier County, Tennessee (Gatlinburg area) and is clearly subject to the jurisdiction of Tennessee courts.

The Plaintiff's claim of jurisdiction over Phillips is not only not plausible, it does not even reach the level of speculative.

II. FAILURE TO STATE A CLAIM FOR WHICH RELIEF MAY BE GRANTED

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss an action for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, at 570 (2007)

The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do[.]" Id. Likewise, under Iqbal and Twombly, legal conclusions are not simply presumed true. The Court does should "not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Markets v. JD Associates, LTD. 215 F.3d 175 (4th Cir. 2000).

As the court noted in McCleary-Evans v. Maryland Dept. of Transp., 780 F. 3d 582 - Court of Appeals, (4th Cir. 2015): "Moreover, Iqbal and Twombly articulated a new requirement that a complaint must allege a plausible claim for relief, thus rejecting a standard that would allow a complaint to "survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some `set of

[undisclosed] facts' to support recovery." Twombly, 550 U.S. at 561, 127 S.Ct. 1955 (alteration in original) (emphasis added)." 780 F.3rd at 587.

Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555, 127 S.Ct. 1955; see Painter's Mill Grille, LLC v. Brown, 716 F.3d 342, 350 (4th Cir. 2013).

In this complaint, literally the only specific allegation the Plaintiff makes against Phillips is that he sent a letter to the Plaintiff, denying him a refund because the Plaintiff would not cooperate with the law firm by providing needed documents. Every other allegation is contained in the sweeping generality, "the defendants," and those statements are simply conclusory in nature, without any supporting facts offered.

The complaint consists mostly of cut and paste statements and allegations from various websites, that do not name a specific act that Phillips did.

As such, this complaint must fail and be dismissed on those grounds.

## III. IMPROPER VENUE

As a matter of law, this matter must be dismissed, and the Plaintiff must file this Matter in Nashville Tennessee. Section 7 of the contract between Castle Law Group and the Plaintiff states:

This Agreement is entered into, governed by and construed in accordance with the laws of the State of Tennessee. Any and all disputes will be resolved in the State of Tennessee.

Case law is specific on forum selection clauses. As the Court noted in Bartels v. SABER HEALTHCARE GROUP, 880 F. 3d 668 - Court of Appeals, 4th Circuit 2018: ("[W]e hold that a forum selection clause that vests `exclusive jurisdiction and venue' in the courts `in' a county provides venue in the state and federal courts located in that county." (emphasis added)); Alliance Health Grp., LLC v. Bridging Health Options, LLC, 553 F.3d 397, 400 (5th Cir. 2008)

The language in the contract is very specific. All disputes will be resolved in the State of Tennessee.

Even if there were no forum selection clause in this contract, the United States Code is explicit on where venue exists.

Under 28 U.S.C. § 1391(b), proper venue lies only in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

All three of these parts of 28 U.S.C. § 1391(b) clearly put the venue in the Middle District of Tennessee. It is where not only Phillips resides but where the companies sued were based. The claims the Plaintiff makes, if true, would have happened in Middle Tennessee. And it goes without saying, Tennessee has personal jurisdiction here.

This case should have been brought in a court in Tennessee. Plaintiff brought this action in an inconvenient forum for Phillips, specifically to make defense of this case as expensive as possible.

## IV. MOTION TO DISMISS DUE TO ARBITRATION CLAUSE

The contract the Plaintiff signed is very specific. Section 7 states: "The Firm and Client agree that any controversy or claim arising out of or relating to the Agreement or breach thereof shall be settled solely by arbitration in accordance with the Uniform Rules for Binding Arbitration in effect at the time of initiation of arbitration, and the judgment rendered by the arbitrator may be entered in any court having jurisdiction thereof and shall not be appealable. "

The Federal Arbitration Act, 9 USC § 2, states:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable.

As the Supreme Court held in Epic Systems Corp. v. Lewis, 138 S. Ct. 1612, 1621 (2018):

Not only did Congress require courts to respect and enforce agreements to arbitrate; it also specifically directed them to respect and enforce the parties' chosen arbitration procedures. See § 3 (providing for a stay of litigation pending arbitration "in accordance with the terms of the agreement"); § 4 (providing for "an order directing that ...

arbitration proceed in the manner provided for in such agreement"). Indeed, we have often observed that the Arbitration Act requires courts "rigorously" to "enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted." American Express Co. v. Italian Colors Restaurant, 570 U.S. 228, 233, 133 S.Ct. 2304, 186 L.Ed.2d 417 (2013)

There is no question an arbitration clause exists. The Plaintiff included the contract with the Arbitration Clause as Exhibit A to his lawsuit. This court is required to rigorously enforce this arbitration agreement. In addition, that arbitration agreement requires the arbitration to be conducted in the State of Tennessee.

While the normal course of operations is to stay a case and order arbitration, Phillips respectfully submits, in this case, the course of action should be dismissal of the Plaintiff's case. The Plaintiff (and Plaintiff's attorney) clearly knew this arbitration provision existed, along with the choice of forum clause. After all, the contract was attached as Exhibit A to the complaint. Because the Plaintiff willfully ignored what is well established law regarding arbitration clauses and choice of law and choice of forum clauses, simply to file this litigation in a forum that is more convenient for the Plaintiff and Counsel, the more severe remedy of dismissal is warranted in this matter.

CONCLUSION

This matter is at best a small claims court breach of contract action. However, the Plaintiff has tried to turn this into a Federal case. The sole justification for the causes the Plaintiff has pled is to try and apply laws that mandate attorney's fees, should the Plaintiff prevail.

Phillips respectfully asks this matter be dismissed as to him. The Plaintiff has failed to establish any contacts with Maryland that would justify the jurisdiction of this court. Further, any venue is properly in Tennessee, per the contract and per 28 U.S.C. § 1391(b).

The Plaintiff fails to state a claim against Phillips for which relief may be granted. Literally, the only thing Plaintiff claims that Phillips did was mail a letter to the defendant.

Finally, Phillips respectfully asks the matter be dismissed because of the Arbitration Clause of the Contract. If this matter is to be litigated, it must be arbitrated in Tennessee. Plaintiff and Plaintiff's Attorney surely had to know this when they filed this lawsuit, since they included the contract as Exhibit A to their complaint.

Respectfully Submitted

Judson Phillips
Pro Se
1113 Murfreesboro Rd #106-317
Franklin, TN 37064
Judson.Phillips.Litigation@gmail.com

Certificate of Service

I certify that a copy of this motion to dismiss was placed in the US mail, to Plaintiff's Attorney, via email, on November 4, 2020.

Judson Phillips



CASTLE LAW GROUP
A PROFESSIONAL CORPORATION

2 International Plaza
Suite 900
Nashville, TN 37217
(615) 599-6000

August 22, 2016

**Personal, Private & Confidential**
Michael Calabro
253 Shadow Glen Ct
Gaithersburg, MD 20878

**Re: Engagement Agreement between Michael Calabro and Castle Law Group, PC**

Dear Mr. Calabro:

Thank you for asking our firm to represent you in connection with legal matters concerning your timeshare agreement(s) (the "Timeshare Agreement"), and various matters related thereto (the "Claims"). This document is to confirm our agreement regarding the scope and terms of your engagement of us. This signed document will constitute an "Engagement Agreement" between you (the "Client") and Castle Law Group, PC (the "Firm"). This Engagement Agreement supersedes any and all previous representation(s) and/or agreement(s) relating in any way to the Legal Services made the subject of this Engagement Agreement. Please review this Engagement Agreement carefully and contact us as soon as possible if you have any questions.

1. **Scope of Engagement**: Each of us agrees that as of the date this Engagement Agreement is executed by all parties, Client has engaged the Firm to represent the Client in regards to pursing a **cancellation** of the Timeshare Agreement(s) referenced above. The scope of this engagement is strictly limited to the activities referenced in this Paragraph 1. The Firm agrees to represent the Client in Client's efforts to secure the cancellation of the Timeshare Agreement between Client and Diamond x 8 (the "Developer"), as well as to pursue the discharge or forgiveness of certain debt that may be owed to Developer by Client, and to pursue if necessary a revision of Client's credit report(s) (Hereinafter corporately referred to as the "Legal Services"). To that end, the Firm will review and analyze all timeshare documents and correspondence between Client and Developer. The