## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## (Southern Division)

| | | |
|---|---|---|
| **MICHAEL CALABRO** | * | |
| **Plaintiff,** | * | |
| | * | **Case No.: 8:19-cv-02433-PWG** |
| **v.** | * | |
| | * | |
| **CASTLE LAW GROUP, P.C., *et al.*** | * | |
| **Defendants.** | * | |

---

### PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS OR IN THE ALTERNATIVE, MOTION TO COMPEL ARBITRATION

Plaintiff, Michael Calabro, by and through his undersigned counsel, Kathleen P. Hyland and Hyland Law Firm, LLC, files this Memorandum in Opposition to Defendant Judson Phillips' Motion to Dismiss or in the Alternative, Motion to Compel Arbitration, ECF No. 26 ("Defendant's Motion"), and in support thereof states as follows:

### I.    INTRODUCTION AND FACTUAL BACKGROUND

As outlined in the Complaint, ECF No. 1 ("Compl."), this matter involves the Plaintiff's claims against an unlicensed debt settlement company, Castle Law Group, P.C. ("Castle Law") and its owner/manager, Judson Phillips ("Phillips"), as well as Castle Marketing Group, LLC ("Castle Marketing"). Plaintiff's claims arise out of being solicited by the Defendants and engaging their debt relief and timeshare exit services. After searching online for legal representation to terminate

his contracts with Diamond Resorts International ("DRI"), Plaintiff was contacted by a representative of Defendant Castle Marketing and offered their services. *See* Compl. at ¶ 28. Plaintiff paid $11,500.00 to Defendant Castle Law to pursue the discharge or forgiveness of the alleged debt owed to DRI, as well as potential revision of Plaintiff's credit reports. *See* Compl., ¶¶s 30-35.

The same day Plaintiff signed the contract with Defendant Castle Law, he realized that it did not assure litigation against DRI to recover Plaintiff's investment with DRI. *See* Compl. at ¶ 36. Plaintiff therefore notified Defendant Castle Law that he did not want to go forward with the representation and requested a refund of the $11,500.00 he had paid that day. *See* Compl. at ¶ 39. Plaintiff only received a response from Defendant Castle Law a month later, after several attempts to contact the company. *See* Compl. at ¶ 40. Despite the fact that Defendant Castle Law had performed no work on Plaintiff's case, it refused to refund his money. *Id.* Acting on behalf of Castle Law, Defendant Phillips stated in a letter to Plaintiff that Plaintiff had frustrated the purpose of his contract and refused to provide any legal services to Plaintiff. *See Id.* and **Exhibit C** to Complaint, ECF No. 1-3. Defendants provided absolutely no real benefit to Mr. Calabro in exchange for the significant up-front fees paid to them by Plaintiff. *See* Compl., ¶¶s 46-48.

Plaintiff sued Defendants for his losses under Md. Code Ann., Com. Law § 13-101, *et seq.*, the Maryland Consumer Protection Act ("MCPA"); Md. Code Ann., Fin. Inst. § 12-1001 *et seq.*, the Maryland Debt Settlement Services Act ("MDSSA");

15 U.S.C. §1679, *et seq*., the Federal Credit Repair Organizations Act, ("CROA"); 15 U.S.C. §6101, *et seq*., the Telemarketing and Consumer Fraud and Abuse Prevention Act; as well as claims for Unjust Enrichment and Fraud.

## II.   STANDARD OF REVIEW

### A. Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2)

When a nonresident defendant files a motion under Rule 12(b)(2) challenging the court's power to exercise personal jurisdiction over him or her, the plaintiff bears the burden of showing that the court has personal jurisdiction over the defendant. *Cleaning Authority, Inc. v. Neubert*, 39 F.Supp.2d 807, 811 (D. Md. 2010). The burden on the plaintiff is only to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge. *Mylan Labs., Inc. v. Akzo*, N.V., 2 F.3d 56, 60 (4th Cir.1993)(citations omitted). In determining whether a plaintiff has met this burden, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction. Id. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989).

### B. Improper Venue Pursuant to Fed. R. Civ. P. 12(b)(3)

The United States Court of Appeals for the Fourth Circuit has held that "Rule 12(b)(3) is the proper rule for a motion to dismiss for improper venue concerning a forum selection clause." *Costar Realty Information, Inc. v. Field*, 612 F.Supp.2d 660, 672 (D.Md.2009) Under Rule 12(b)(3), a court is "free to look at matters outside of the pleadings, however, the court still must draw all reasonable

inferences in the light most favorable to the plaintiff." *Id.* Additionally, where no evidentiary hearing is held with respect to the motion, the plaintiff must only make a prima facie showing of proper venue in order to survive a motion to dismiss. *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004).

The Fourth Circuit has reasoned that because an arbitration clause is a specialized kind of forum-selection clause, they therefore concern venue, and motions to dismiss or compel arbitration should be brought under Rule 12(b)(3). *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 365 (4th Cir. 2012)(citations omitted). The party seeking to compel arbitration bears the initial burden to show a valid agreement. *Adkins v. Labor Ready, Inc.,* 303 F.3d 496, 500-01 (4th Cir. 2002). In determining whether an agreement to arbitrate exists, courts "look first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement." *Id.* at 294.

### C.  Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6)

To survive a 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A Rule 12(b)(6) motion will therefore be granted if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* at 679. "A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those

allegations allow the court to reasonably infer" that the plaintiff is entitled to relief. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011).

In making this determination, a court considers the complaint in its entirety, as well as documents attached or incorporated into the complaint, or that are integral to and explicitly relied on in the complaint, where there is no authenticity challenge. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). Dismissal "is inappropriate unless, accepting as true the well-pled facts in the complaint and viewing them in the light most favorable to the plaintiff, the plaintiff is unable to state a claim to relief." *Brockington v. Boykins*, 637 F.3d 503, 505-06 (4th Cir. 2011).

## III.  ARGUMENT

### A.    THIS COURT HAS JURISDICTION OVER DEFENDANT

Under Maryland law, the assertion of personal jurisdiction requires a two-step process. *Mackey v. Compass Mktg., Inc.,* 391 Md. 117, 129 (2006). First, a court must determine that defendant's conduct violates a specific provision of Maryland's long-arm statute, and second, the exercise of jurisdiction must comport with due process. *Id.* at 130. *See Bond v. Messerman*, 391 Md. 706, 895 A.2d 990, 999 (2006) (Maryland courts "have construed [the] long-arm statute to authorize the exercise of personal jurisdiction to the full extent allowable under the Due Process Clause.").

### 1.  Defendant's Conduct Violated Maryland's Long-Arm Statute

Maryland's long-arm statute provides in relevant part that:

> (b) A court may exercise personal jurisdiction over a person, who directly or by an agent:
>
> > (1) Transacts any business or performs any character of work or service in the State;
> >
> > (2) Contracts to supply goods, food, services, or manufactured products in the State;
> >
> > (3) Causes tortious injury in the State by an act or omission in the State; [or]
> >
> > (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

Md. Code Ann., Cts. & Jud. Proc. § 6–103.

This Court can assert jurisdiction over Defendant Phillips pursuant to § (b)(1). In order to meet the jurisdiction requirement under § 6–103(b)(1), the defendant need not have been physically present in Maryland, only have conducted actions which "culminate in purposeful activity within the state." *Costar Realty Information, Inc. v. Field*, 612 F.Supp.2d 660, 671 (D.Md.2009) (citing *Bahn v. Chicago Motor Club Ins.*, 98 Md.App. 559, 568 (Md.Ct.Spec.App.1993), granting personal jurisdiction where the nonresident defendant sent mail to and contracted with Maryland plaintiffs). Purposeful activity may be shown by a nonresident defendant initiating contact with the forum state. *See Giannaris v. Cheng*, 219 F.Supp.2d 687, 692–93 (D.Md.2002) (granting personal jurisdiction where the nonresident defendant initiated the business relationship with forum residents).

Defendant Castle Law engaged in purposeful activity within the state of Maryland when it initiated contact with and contracted with the Plaintiff, a

6

resident of Maryland. Defendant Phillips, the owner and manager of Castle Law, later sent mail to Plaintiff confirming his company's refusal to refund the Plaintiff for a same-day rescission of the contract. In his Motion, Defendant Phillips does not deny that, at the time of the events alleged in the Complaint, he was the owner and manager of Castle Law.

Defendant Phillips asserts in his Motion, without any evidence, that Plaintiff initiated the business relationship with Defendants by reaching out to a Virginia corporation, Battlefield Research and Consulting ("Battlefield"). Def. Mot. at 13. Plaintiff in fact asserted in his Complaint that he received an unsolicited call from a representative with Battlefield, who advised Plaintiff that he represented Castle Law. *See* Compl., ¶¶s 27-31. Plaintiff posited he received this call because he had been searching for information online regarding help with terminating his contracts with DRI, and that the Battlefield/Castle Law representative found his information and reached out to him. *See Id.* Defendant may want to believe that Plaintiff's claim is implausible or unlikely, but it is in fact what Plaintiff is asserting occurred. Defendant has offered no statutory or common law basis for not construing Plaintiff's allegations in the light most favorable to him, *assuming him credible,* and drawing the most favorable inferences of his assertions. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989)(emphasis added).

Moreover, once the parties conduct discovery, Plaintiff may discover that Defendant ran an interactive marketing website that targeted Marylanders. This would provide an additional basis for personal jurisdiction. *See, Zippo Mfg. Co. v.*

7

*Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997)(incorporated into this jurisdiction in other cases).

### 2. Exercising Jurisdiction Over Defendant Comports With Due Process

Once personal jurisdiction is established under the Maryland long-arm statute, the court must then determine whether the exercise of personal jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. *See Jason Pharmaceuticals, Inc. v. Jianas Bros. Packaging Co., Inc.,* 94 Md.App. 425, 430 (Md.Ct.Spec.App.1993). Due process is satisfied where the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *See Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316 (1945). To establish minimum contacts, the defendant's actions must be "such that [the defendant] should reasonably anticipate being hauled into court [in the forum state]." *See World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 297 (1980). See also *Jason Pharmaceuticals,* 94 Md.App. at 434-435 (stating that the same contacts that provide a basis for jurisdiction under the long arm statute may be applied to the due process analysis).

A forum state does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction, with respect to interstate contractual obligations, on parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state." *See Burger King Corp. v. Rudzewicz,*

471 U.S. 462, 473 (1985)(citation omitted). These defendants are subject to regulation and sanctions in the other state for the consequences of their activities. *Id.* This is because a state generally has a "manifest interest" in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors. *Id.* Where individuals "purposefully derive benefit" from their interstate activities, it may well be unfair to allow them to escape having to account in other states for consequences that arise proximately from such activities *Id* at 474. Therefore, when a defendant has "purposefully directed" his activities at residents of the forum state, and the litigation results from alleged injuries that "arise out of or relate to" those activities, the defendant can be said to have received "fair warning" that this activity could subject him or her to the jurisdiction of another state. *Id* at 472.

The reasons stated by Plaintiff above, establishing Defendant Phillips' contacts under Maryland's long-arm statute, may also be applied to establish his "minimum contacts" under the due process analysis. *See Jason Pharmaceuticals,* 94 Md.App. at 434-435. This litigation has arisen largely as a result of Defendant Phillips' communication with Plaintiff confirming that Castle Law would not be refunding Plaintiff's up-front fee of $11,500. Plaintiff asserts in his Complaint that this refusal was a violation of CROA, because under that law he had three business days to cancel his contract with Defendant Castle Law. *See* Compl., ¶¶s 13-14. Defendant Phillips' letter also established a violation of the MDSSA, because it confirmed that his company was keeping Plaintiff's up-front fee without having

performed any work for Plaintiff. *See* Exhibit C to Complaint. Defendant's letter to Plaintiff is also a basis of Plaintiff's claims for Fraud and Unjust Enrichment. *See Id.* Defendant did not explain why Plaintiff was not entitled to a refund for a same-day cancellation of the contract, and instead asserted that Plaintiff's only recourse was to go forward with the terms of the contract and provide necessary documents to them. *Id.*

Defendant Phillips attempts to explain in his Motion why he would not have purposefully established contacts with Maryland, by asserting that "one of the reasons the Plaintiff needed to come to Tennessee was because Tennessee is a state where there would be jurisdiction over Diamond Resorts." Def. Mot. at 13. Defendant states no basis for the conclusion that Tennessee would have a stronger claim for jurisdiction over Diamond Resorts than Maryland, when Diamond Resorts does business in every state and the Plaintiff resides in Maryland. In fact, several of the Diamond Resorts affiliated companies are registered to do business in Maryland, and Diamond Resorts Corporation is a limited liability company organized under Maryland law with the Maryland Department of Assessments and Taxation. *See* **Exhibit 1**, SDAT Filing for Diamond Resorts Corporation.

Upon information and belief, Defendant Phillips and his company Castle Law deliberately approached consumers wanting debt relief and timeshare exit services related to contacts with Diamond Resorts. At the very least, Plaintiff properly pled that he was approached by Castle and its agents to retain Castle's debt relief services. At this pleading stage, Defendant Phillip's mere suggestion that

10

Plaintiff contacted Defendants is not sufficient evidence to outweigh this well-pled fact. Defendants therefore should be subject to regulation and sanctions in Maryland for the consequences of their activities. Providing Plaintiff a convenient forum for redressing the injuries inflicted by Defendants serves the purposes of the jurisdictional rules, and does not offend the ideas of fair play and substantial justice.

### B. PLAINTIFF PROPERLY PLED SPECIFIC CLAIMS AGAINST DEFENDANT PHILLIPS

In his Motion, Defendant presents little argument for why the facts as alleged by Plaintiff do not establish a plausible claim for relief for violations of MCPA, MDSSA, CROA, the Telemarketing and Consumer Fraud and Abuse Prevention Act and Fraud. Defendant only asserts that any allegation made against "the defendants" as a whole, and not just against him individually, is not specific enough to state a claim against him. Def. Mot. at 15. While it is true that many of Plaintiff's claims for relief arise out of the behavior of all the Defendants, each of Plaintiff's claims against "the defendants" does in fact refer back to facts alleged against each Defendant individually. Defendant is one of the parties Plaintiff alleges violated these laws.

Defendant further states that Plaintiff's Complaint "consists mostly of cut and paste statements and allegations from various websites." Def. Mot. at 15. In fact, only four pages in Plaintiff's twenty-two page Complaint contain any third-party statements that originated from a website or public documents. *See* Compl.,

¶¶s 6-9. The rest of the Complaint relates specifically to Plaintiff's interactions with, and harm incurred from, the Defendants, specifically including Defendant Phillips. Defendant Phillips further admitted that he discovered his former coworker, Mr. William Keever, committed fraud through Castle in mid-2017. Def. Mot. at 7. Yet, on December 19, 2017, which is arguably late-2017 and after this point, Defendant Phillips personally refused to refund Mr. Calabro's $11,500 fee. *See* Exhibit C to Complaint. Defendant's timeline, which is outside of the four corners of the Complaint, suggests that he knowingly refused to return client monies in spite of knowledge of fraudulent business practices. At the very least, the Plaintiff has the right to take discovery to determine the extent to which Phillips continued Castle's fraudulent operations and the nexus between Phillips and Castle.

In sum, Plaintiff's Complaint contains sufficient factual allegations to withstand Defendant's preliminary challenge. As stated above, Defendant Phillips' letter to Plaintiff is the basis of many of the claims brought by Plaintiff. *See* Exhibit C to Complaint. Plaintiff has set out the specific violations of law he alleges are evidenced in Defendant's letter. Therefore, Defendant's motion should be denied.

## C.   THE MOTION TO DISMISS FAILS BECAUSE THE FORUM SELECTION CLAUSE IS PERMISSIVE

The Court should deny Defendant's Motion to Dismiss because the forum selection clause is permissive, not mandatory. When construing forum selection clauses, "federal courts have found dispositive the particular language of the

clause." *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650-51 (4th Cir. 2010). "A forum selection clause, like other contractual provisions, must be interpreted in accordance with its plain meaning." *Rihani v. Team Exp. Distrib., LLC*, 711 F.Supp.2d 557, 561 (D.Md.2010) (citation omitted).

The Fourth Circuit has consistently held that "a general maxim in interpreting forum-selection clauses is that an agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere unless it contains specific language of exclusion." *IntraComm, Inc. v. Bajaj*, 492 F.3d 285, 290 (4th Cir. 2007)(citations omitted). In *IntraComm, Inc.,* the court analyzed *Excell, Inc.*, which states,

> Mandatory forum selection clauses "contain [ ] clear language showing that jurisdiction is appropriate only in the designated forum." *Thompson v. Founders Group Intern.*, 20 Kan.App.2d 261, 886 P.2d 904, 910 (1994). For example, a clause stating "venue for any dispute arising under or in relation to this contract shall lie only in the Seller's state and county," has been deemed mandatory. *Id.* (citing *Vanier v. Ponsoldt*, 251 Kan. 88, 833 P.2d 949 (1992)). In contrast, permissive forum selection clauses authorize jurisdiction in a designated forum, but do not "prohibit litigation elsewhere." *Id.* **An example of a permissive forum selection clause is:** "The parties agree that in the event of litigation between them, Franchise Owner stipulates that the courts of the State of Michigan shall have personal jurisdiction over its person, that it shall submit to such personal jurisdiction, and that venue is proper in Michigan." *Id.* (citing *Utah Pizza Service v. Heigel*, 784 F.Supp. 835, 837 (D.Utah 1992)).

106 F.3d 318, 321 (10th Cir. 1997). Emphasis added.

Defendant engages in no analysis as to why the instant forum selection clause would require mandatory resolution of disputes in Tennessee. Defendant

mistakenly assumes that the clause is mandatory merely because it contains the word "will." Def. Mot. at 15. It is not enough that a clause contain the word "shall" to be considered mandatory. In reviewing the differences in the clauses stated above, the court in *IntraComm, Inc.* explained that "although both clauses, like the one in the instant case, use the word "shall," the word's meaning differs with context." *IntraComm, Inc.*, 492 F.3d at 290. Defendant failed to review the clause in light of any other mandatory or permissive clauses, and the failure to do severely weakens its position.

Instead, Defendant relies exclusively on *Bartels v. Saber Healthcare Group, LLC*, 880 F.3d 668, 674-75 (4th Cir. 2018). In *Bartels,* the court considered a motion to remand, where there was a mandatory forum selection clause stating that the county where a nursing facility was located "shall be the sole and exclusive venue" for resolution of disputes between the parties. *Id.* The court found that the language unambiguously required the case to be resolved in that county. *Id.* There was no discussion by the court of mandatory versus permissive forum selection clauses. Further, the *Bartels* decision did not involve questions of dismissal under Rule 12(b)(3). Here, the facts and clause before the Court differ from the facts and clauses stated in that case.

The Castle Law Clause does not contain any clear wording that mandatory clauses typically incorporate to denote exclusivity. In contrast to the Castle Law Clause, a plain reading of the mandatory clause at issue in the Defendant's Fourth

14

Circuit authority *Bartels* clause is more clearly worded to be mandatory. In *Bartels*, the forum-selection clause stated,

> [T]hat "the county in which the Facility is located **shall be the sole and exclusive venue** for any dispute between the parties, including, but not limited to, litigation, special proceeding, or other proceeding between the parties that may be brought, arise out of or in connection with or by reason of this Agreement."

*See Bartels*, 880 F.3d at 674. Emphasis added.

Plaintiff further implores the Court to compare the Castle Law Clause to the tightly written mandatory provision in *Excell, Inc.*

> In the event that **any dispute** shall arise with regard to **any provision** or provisions of this Agreement, this Agreement shall be subject to, and shall be interpreted in accordance with, **the laws of the State of Colorado**. **Jurisdiction** shall be in the State of Colorado, and venue shall lie in the County of El Paso, Colorado.

*See Excell, Inc.*, 106 F.3d at 320. Emphasis added.

Conversely, a plain reading of the Castle Law Clause shows that it does not include clear and exclusive language related to disputes or jurisdiction. The notable absence of terms similar to the clauses above requires the Court to conclude that it is permissive.

Federal courts in this circuit have deemed a clause to be mandatory when it uses the phrase "exclusive jurisdiction" and also mentions a specific forum. *See Koch*, 139 F. Supp. 2d at 694 ("The focus of the court's investigation should not be on AOL's choice of the word "resides," but, rather, on its use of the phrase "exclusive jurisdiction" coupled with the designation of a specific forum.") The

Seed Capital clause mentions a venue, but is otherwise vague. Merely stating that "the appropriate venue" will be in Nevada does not automatically render other venues inappropriate. *See Utah Pizza Service*, 784 F.Supp. at 837 (A clause containing "venue is proper in Michigan" is permissive).  Moreover, mandatory clauses typically include words such as "sole" or "only." Here, the clause fails to state that the Eighth Judicial District Court is the "only" or "sole" venue, and does not state any other modifying language to specifically exclude other state or federal courts. This clause does not limit all disputes to one sole venue, and therefore, venue is proper in this Court.

### D.   DEFENDANT HAS NOT MET HIS BURDEN TO PROVE HE IS A PARTY TO THE AGREEMENT TO ARBITRATE

Defendant moved, in the alternative, to compel arbitration. Defendant Phillips has not met his burden to show that he is a party to the agreement to arbitrate. This case involves a distinct question of whether a non-signatory to a contract may invoke the arbitration provision against the signatory to the contract. Because arbitration is a matter of contract, and thus requires consent, there is no presumption that an arbitration agreement was formed, and no policy in favor of enforcing arbitration, until and unless a court finds that there is an agreement to arbitrate. *See Equal Employment Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 293 (2002) (citations omitted) (stating that while the FAA directs courts to place arbitration agreements on equal footing with other contracts, it does not require parties to arbitrate when they have not agreed to do so). "In determining

whether the parties executed a valid agreement to arbitrate, courts generally apply ordinary state-law principles that govern the formation of contracts." *See Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 305 (4th Cir. 2001) (citing *First Options v. Kaplan*, 514 U.S. 938, 944 (1995)).

Paragraph 7 of the contract between Plaintiff and Castle Law Group states that "[t]he Firm and Client agree that any controversy or claim arising out of or relating to the Agreement or breach thereof shall be settled solely by arbitration." Def. Mot., Exhibit 2. To prevail on a motion to compel arbitration, the Defendant has to show why he is entitled to enforce the contract under state law. Defendant Phillips has not provided any proof as to his position in relation to the contract, other than to repeatedly deny that any of Plaintiff's claims are directed at him individually. Def. Mot. at 10-11, 13, 15. As long as the Defendant intends to argue that Plaintiff's claims do not implicate any actions on his part and that the contract was solely with Defendant Castle Law, he cannot invoke the arbitration provision against Plaintiff because to do so contradicts Maryland contract law.

Other decisions in Maryland have dealt with similar, yet distinct issues related to non-signatories in arbitration.  None of the binding authorities appear to address the same factual situation. However, each provides a deeper level of analysis and examines the relationships between the signatories and non-signatories.  To name a few, in *Thompson v. Witherspoon*, 197 Md. App. 69, 73 (2011), the Court analyzed whether a signatory could bind a non-signatory, and looked at whether the claims were linked or whether the parties benefited. The

Court held that there was an insufficient factual and legal connection between the claims to compel the appellants to arbitration. *Id*. at 90. In *Schneider*, the Court not only abandoned its previous analytical framework, but also did not compel arbitration against a company when a subcontractor's performance bond incorporated the arbitration agreement by reference. *See Schneider*, 231 Md. App. at 30. In *Griggs v. Evans*, 205 Md. App. 64, 88 (2012), the Court also examined *Wachovia Bank, N.A. v. Schmidt, supra*, 445 F.3d 762, "a case we discussed previously for its analysis of the "significant relationship test," [that] also illustrates when a non-signatory cannot invoke an arbitration clause under equitable estoppel."

Here, the Defendant has not explained how he has the right to invoke arbitration and cannot do so in a reply. He cites no authority to support his statement that the arbitration clause in Plaintiff's contract with Defendant Castle Law applies to any claims Plaintiff has against himself individually. The practical paradox for the Defendant is that he cannot disassociate from contract with Mr. Calabro, and then simultaneously invoke the arbitration term from the underlying contract. He has to commit to one side or the other if he seeks to invoke arbitration. Failure to do so would prejudice the Plaintiff because, in the event this case is sent to arbitration, Defendant Phillips likely intends to argue that he is not a party to the contract between Plaintiff and Defendant Castle Law. At this stage of the litigation, whether the parties had a meeting of the minds to arbitrate has not been proven by Defendant and is a matter for discovery. In his motion, Defendant has

failed in his burden of establishing that he and the Plaintiff agreed to arbitrate any disputes and thus the motion to arbitrate should be denied.

## IV.   CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests that this Court deny the Defendant's Motion to Dismiss or in the Alternative, Motion to Compel Arbitration.

Dated: December 7, 2020                    Respectfully Submitted,

                                   /s/*Kathleen P. Hyland*_____
                                   Kathleen P. Hyland (Bar No. 30075)
                                   HYLAND LAW FIRM, LLC
                                   222 Severn Avenue, Suite 17
                                   Annapolis, MD 21403
                                   Telephone: (410) 777-8536
                                   Fax: (410) 777-8237
                                   Email: kat@lawhyland.com

                                   *Attorney for Plaintiff*


## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2020, a true and correct copy of the foregoing was filed via the Court's CM/ECF System, and that I served a copy on Defendant Judson Phillips via electronic mail to: judson.phillips.litigation@gmail.com and via U.S. Mail to Judson Phillips, 3117 Vera Valley Road, Franklin, TN 37064.


                                   /s/*Kathleen P. Hyland*